FORD et al. v. McRAE et al.

No. 9821.

Court of Civil Appeals of Texas. Galveston.

April 20, 1933.

Rehearing Denied July 11, 1933.

Ross, Wood, Lawler & Wood, Champ Ross, R. Wayne Lawler, Baker, Botts, Andrews & Wharton, and Palmer Hutcheson, all of Houston, for appellants.

Bryan & Bryan and Chas. C. McRae, all of Houston, for appellees.

GRAVES, Justice.

In this cause the appellees, upon trial without a jury's aid, recovered from appellants the whole of a 131.498-acre body of land out of "the Soders tract" in the Reinerman survey in Harris county, saving and excepting therefrom four different smaller pieces, which whole and several exceptions are fully and particularly described in both the pleadings and the judgment.

Since the findings of fact and law filed by the learned trial court comprehensively disclose not only the nature and result of the suit, but also the grounds upon which its action was based, they are here copied in full:

"Findings of Fact.

"1. I find that suit was originally filed in the District Court of Harris County, in trespass to try title to recover the land in this controversy by F. C. Ford et al. v. Heirs of John Reinerman et al., number 172—444, on January 24th, 1930, in which said suit Chas. C. McRae and David Hannah, cross-plaintiffs in the present suit, were originally made defendants with various other parties, and in which suit the present cross-defendants were plaintiffs. I find that after the said David Hannah and Chas. C. McRae had in said suit filed an answer and cross-action against the plaintiffs, that on May 19th, 1930, plaintiffs in said suit filed a motion for severance as to the said Chas. C. McRae and David Hannah, in which allegation was made that the disposition of the litigation would be simplified and expedited, and representing to the Court that if severance was granted that it would not prejudice the cause of action of the said Chas. C. McRae and David Hannah on their cross-action. Thereupon, on the 19th day of May, 1930, said motion was granted over the protest of the said McRae and Hannah, and suit as between said original plaintiffs, and defendants, McRae and Hannah, was by order of the court severed and docketed as No. 172—444-A under the style of Chas. C. McRae et al. v. F. C. Ford et al., to which action of the Court the defendants, McRae and Hannah excepted.

"2. I find that the land sued for by cross-plaintiffs is situated in what is known as the Soders 235¼-acre tract of land, in the John Reinerman League in Harris County, Texas, and I further find that the land in controversy is included in the land as shown by plain-

tiff's Exhibit 'B', which also discloses the lines of the land claimed by cross-defendants.

"3. I find that the cross-plaintiff, Chas. C. McRae, held title for himself and up to the time of rendition of judgment in this case was holding an undivided one-half interest in the land adjudged to cross-plaintiffs in this suit for the use and benefit of his co-plaintiff, David Hannah.

"4. I find that the cross-plaintiffs, Chas. C. McRae and David Hannah, as shown by the deeds offered in evidence on the trial of this case are the record-owners in fee simple of the following described land:

"That certain tract or parcel of land in the John Reinerman Survey in Harris County, Texas, patented by the State of Texas to the Heirs of John Reinerman by patent dated May 25, 1847, No. 181, Vol. 6 of the Records of the General Land Office of Texas, and recorded in the Deed Records of Harris County, Texas, Vol. O, page 145, and more particularly described as follows, to-wit:

"Beginning at the southeast corner of the triangular tract of land conveyed by Bertha Roy et al. to J. M. Goss et al., by deed recorded in the Deed Records of Harris County, Texas, Vol. 585, page 26, being at the intersection of the north line of the right-of-way of the MK&T Ry. Co. of Texas with the west line of the Houston & Texas Central RR Co. land on which the westerly Y of the track known as the Stella Cut-off is located, and being the Y connecting the said Stella-cut-off to the North with the main line of the said H&TC RR. Co. Right-of-way; thence from the beginning point westerly with the North line of the MK&T Ry. Co. right-of-way north 88 deg. 38 min. west 130 feet or 46.8 vrs.; thence north 89 deg. 11 min. west 193 feet, or 68.48 vrs.; thence north 89 deg. 53 min. west passing the apex of the said triangle above mentioned, 2,720.5 feet, or 979.38 vrs. and continuing in the same course 2,308 feet additional, or 830.88 vrs. or 5,028.5 feet, or 1,810.-26 vrs. in all on the last designated course to corner in fence on the north line of the said MK&T Ry. Co. right-of-way made with the fence next stated; thence North following fence 533 feet, or 191.88 vrs. to corner; thence North 89 deg. 59 min. east 108 feet, or 38.88 vrs. with fence to corner; thence North 0 deg. 31 min. East following fence 604 feet or 217.44 vrs. to corner; thence North 89 deg. 36 min. east 4,254.6 feet, or 1,531.656 vrs. following fence to the west right-of-way line of the H&TC Ry. Co.; thence South 51 deg. 22 min. east 825.6 feet, or 297.216 varas, following fence line to the beginning curve to the right on west line of the said Stella cut-off property; thence Southerly following the said curve and Stella cut-off property and right-of-way fence with radius of 905 feet and long cord south 26 deg. 50 min. east 751.6 feet or 270.576 vrs. to the place of beginning,

containing 131.498 acres, more or less, saving and excepting out of the above described tract of land, however, in so far as same are included in said above described tract of land, tracts Numbered One to Four, inclusive, as mentioned and described in the judgment rendered in this case.

"5. I find that Tract No. One referred to in the judgment rendered in this case was by stipulation and agreement of counsel on the trial of this case eliminated and excepted from any part of the land sued for by the cross-plaintiffs herein, and that it was agreed on the trial that no judgment therefor should be rendered in favor of cross-plaintiffs. Tract No. One being described as follows, to-wit:

"Tract No. One.

"That certain parcel or tract of land being the same tract of land conveyed by Bertha Roy to J. M. Goss, et al. by deed of record in the Deed Records of Harris County in Vol. 585, page 6, better described as follows:

"Beginning at a point, same being at the intersection of the North line of the right-of-way of the MK&T Ry. of Texas, with the West line of the Houston & Texas Central RR Co. land on which the Westerly Y of the track known as the Stella cut-off is located, and being the Y connecting the said Stella cut-off to the North with the main line of the said H&TC RR Co. right-of-way;

"Thence from said beginning point westerly with the North line of the MK&T Ry. Company of Texas right-of-way North 88 deg. 38 min. W. 130 feet or 46.8 vrs; thence North 89 deg. 11 min. West 193 feet or 68.48 vrs.; thence No. 89 deg. 53 min. to a point for the apex of the said triangular tract 2,720.5 feet or 979.38 varas; thence N. 89 deg. 13 min. East 3049.5 feet or ——— varas to a point where said line intersects the West right-of-way fence line of the said Stella cut-off to the said H&TC Ry. right-of-way, being the same Y referred to as heretofore.

"Thence in a Southerly direction following the said West right-of-way fence line of the said Stella cut-off of the H&TC Ry. right-of-way 55 feet to the place of beginning.

"6. I find that the tract of land referred to as Tract No. Two in the judgment rendered in this case, containing 4½ acres of land, is not included in the West half of what is known as the Soders tract, and that it was admitted by counsel for cross-plaintiffs on the trial that said 4½ acres of land was not included in their chain of title and that same should be deducted out of the tract of land herein sued for, said 4½ acres being fully described in defendant's Exhibit 'A.' Tract No. Two being described as follows, to-wit:

"Tract No. Two.

"That certain tract or parcel of land beginning at a point in the intersection of the South line of a tract known as the Adam L. and Nancy Soders tracts, as recorded in Book O, Vol. 352, of the Harris County Deed Records, with the West right-of-way fence line of that portion of the H&TC RR Company right-of-way known as the Stella cut-off, said intersection being the Northeast corner of the triangular tract described in tract Number One;

"Thence in a Westerly direction with the South line of the said Adam L. and Nancy Soders tract and the North line of Tract Number One herein described, 214.5 varas to a point;

"Thence in a Northerly direction parallel with the West line of the said Adam L. and Nancy Soders tract, 206.5 varas to a point;

"Thence in an Easterly direction parallel with the South line of the said Adam L. and Nancy Soders tract to a point in the said West right-of-way fence line of the H&TC RR. right-of-way, being the West fence line of said line of what is known as the Stella cut-off;

"Thence with the said West right-of-way fence line of the Stella cut-off with a curve of 905 foot radius in a Southerly direction to the place of beginning, containing 4½ acres.

"7. I find that the tract of land numbered Three containing 58¹³⁄₁₆ acres of land mentioned and described in the judgment rendered herein is not wholly included in said tract of 131.498 acres of land. The description of the said 58¹³⁄₁₆ acres of land as shown in the deed introduced in evidence by cross-defendants calls for 'commencing at the Southwestern corner' of said Soders tract; Thence North 'along with the Western league line' (meaning John Reinerman League Line). I find that the said West line of the John Reinerman League includes the true West line of the Soders tract, and that said West line lies 24 feet West of the Post Oak Road, which is 60 feet wide, and I further find that the East line of this road is the West line of the Reina, Jechow or Harrop tract, and I further find that the East line of this last mentioned tract is the West line of the 131.498 acre tract, all of which facts may be seen from defendant's Exhibit 'A.' Tract No. Three is described as follows:

"Tract No. Three.

"Beginning at a point which is the intersection of the South line of a tract of land in the John Reinerman Survey, formerly known as the Adam L. and Nancy Soders tract of land, as described in Book O, page 352, of the Harris County deed records with the West line of the John Reinerman Survey;

"Thence North with the said West line of the said Reinerman Survey, which said line is 84 feet West of the West line of a tract of land which is known as the Harrop,

Jechow and/or Reina land; said West line of the John Reinerman Survey being also 24 feet West of the West line of the Post Oak County Road, said Post Oak Road right-of-way being 60 feet wide, 200 varas to a point in the said West line of the John Reinerman Survey; Thence in an Easterly direction parallel with the South line of the said Adam L. and Nancy Soders tract 1,660½ varas to a point;

"Thence in a Southerly direction parallel with the said West line of the John Reinerman Survey to a point in the South line of the said Adam L. and Nancy Soders Tract; Thence in a Westerly direction with the South line of the said Adam L. and Nancy Soders tract to the place of beginning, containing 581³⁄₁₆ acres of land, being the same tract of land conveyed by Mathias Stuer and wife to Andrew Kroll by deed dated December 31st, 1859, and recorded in the Deed Records of Harris County, Texas, Vol. W, at page 137.

"The lines, calls and points herein called for shall only run such a distance as shall be necessary to encompass and include 581³⁄₁₆ acres of land.

"8. I find that the 50 acre tract referred to in the judgment as Tract No. Four, being the land deeded by Matthias Stuer to Samuel Anderson by deed dated August 8, 1890, and introduced by cross-defendants in evidence on the trial of this case can be definitely located and that the parties intended to locate said 50 acres as follows, to-wit:

"Tract No. Four.

"The following described tract or parcel of land beginning at a point in the North line of a tract of land formerly known as the Adam L. and Nancy Soders tract, as recorded in Book O, page 352, of the Harris County Deed Records, which point is located at the intersection of the said North line of the Adam L. and Nancy Soders tract with the West right-of-way fence line of the main line of the H&TC RR. Co.;

"Thence in a Westerly direction with the North line of the said Adam L. and Nancy Soders tract to a point;

"Thence in a Southerly direction parallel with the Western line of the said Adam L. and Nancy Soders tract of land 200 varas to a point;

"Thence in an Easterly direction parallel with the North line of the said Adam L. and Nancy Soders tract to a point in the said Westerly right-of-way fence line of the H&TC RR Company right-of-way.

"Thence in a Northwest direction with the said Westerly right-of-way fence line of the H&TC RR Company 308 vrs. to the place of beginning, containing 50 acres of land.

"The lines, calls and points herein called for shall only run such a distance as shall be necessary to encompass and include 50 acres of land.

"9. I further find that the tracts described in said alternative pleading of cross-plaintiffs in trespass to try title as less and except:

"'Two acres, more or less, said two acres being more fully and particularly described in judgment in cause of MK&T Ry. Co. of Texas v. Tom Robinson, being Cause No. 167,809 in the County Court of Harris County, Texas, said judgment being dated November 19, 1915, and recorded in the Minutes of said Court, Book F, pages 438 and 440, said tract of land containing Two acres, more or less, more particularly described in deed from T. W. Ford to Houston Belt & Terminal Ry. Co., dated November 9, 1905, recorded in Deed Records of Harris County, Texas, in Vol. 184, page 123, to which reference is here made, and 2.05 acres of land more particularly described in deed from H. H. Ford et al. to H&TC Ry. Co., dated August 5, 1913, recorded June 29, 1914, in Deed Records of Harris County, Texas, Vol. 323, page 537,' are not included in said tract of 131.498 acres of land hereinbefore described, and comprise no part of the land adjudged to plaintiffs in this suit.

"10. I further find that there is an excess in the Soders tract, included in the original field notes over and above 235¼ acres of land, the quantity it was originally supposed to contain, and in this connection I find that the west line of the Soders tract is 440.8 varas wide instead of 400 varas as originally supposed, and that the west line of the said 131.498 acres as shown by defendant's Exhibit 'A' is 438 varas wide at the west end thereof.

"11. I further find that defendant's Exhibit 'A' shows the boundaries of the tracts of land referred to in these findings, and the quantity thereof as well as the acreage of the various tracts, except as hereinbefore stated. I find that the West line of the Soders tract was intended to follow the West line of the said Reinerman League, as shown on defendant's Exhibit 'A,' as having been established by F. W. Weachter.

"12. I find that cross-defendants have not for a period of three years before the institution of this suit had peaceable and adverse possession under title or color of title to the land adjudged to cross-plaintiffs in the decree rendered in this case.

"13. I find that cross-defendants have not for a period of five years before the institution of this suit had peaceable and adverse possession of the land adjudged to cross-plaintiffs in the decree rendered in this case, cultivating, using or enjoying the same, and paying taxes thereon, and claiming under a deed or deeds duly registered.

"14. I find that cross-defendants have not

for a period of ten years before the institution of this suit had peaceable and adverse possession of the land adjudged to cross-plaintiffs in the decree rendered in this case, cultivating, using or enjoying the same.

"15. I find that cross-defendants have not for a period of twenty-five years prior to the institution of this suit had peaceable and adverse possession of the lands adjudged to cross-plaintiffs in the decree rendered in this case, under claim or right in good faith, under a deed or deeds or any instrument or instruments, purporting to convey the same, recorded in the Deed Records of Harris County, Texas.

"16. I find that cross-plaintiffs prior to the institution of this suit had no notice that cross-defendants were in possession of, or that they intended to claim adversely the land adjudged to cross-plaintiffs in the judgment rendered in this cause.

"Conclusions of Law.

"1. I find as a matter of law that cross-plaintiffs are not co-tenants with cross-defendants in the land sued for in their First Amended Answer and cross-action filed herein.

"2. I further find that cross-plaintiffs are not barred by either the three, five, ten or twenty-five years statutes of limitation from recovering the land adjudged herein to cross-plaintiffs.

"3. I further find that cross-plaintiffs are the record-owners of and are entitled to recover judgment for the land adjudged to them in the decree rendered in their favor in this cause, and further find that they derived title to said land so adjudged to them by mesne conveyances from J. C. B. Culmore under deed to him from Mattias Stuer (sometimes referred to as Matthias Stuce) said deed being dated August 8th, 1890, filed for record August 11th, 1890, at 11:35 A. M., and recorded in Vol. 52, page 5, of the Harris County Deed Records, finding in this connection that as a matter of law that the legal effect of said deed was to vest in said Culmore by Warranty Deed the title to all the land in the West half of the Soders tract, and all the land in the Northeast one-fourth of said Soders tract, save and except the specific tracts excepted out of said West one-half and out of said Northeast one-quarter of said Soders tract, as mentioned and described in said deed to the said Culmore. The specific tracts excepted out of the West one-half and the Northeast one-quarter of the Soders 235¼ acre tract as mentioned and described in said deed to the said Culmore, were as follows:

"First: 581⅜₁₆ acres by deed from Stuer to Andreas Kroll dated December 5th, 1854, recorded in Book W, page 137, and described in said deed as follows:

" '581⅜₁₆ acres of land, it being a part of a league of land originally granted to Henry Reineman and the S. western quarter of 235¼ acres of land conveyed by C. L. Betge and Louisa Betge to Adam L. Soders and Nancy Soders in obedience to the decree of the Honl. the District Court of Harris County on its fall term on Tuesday Decr. 11th, 1849, by a deed dated Decr. 28th, 1849, and recorded in Harris County Record of deeds book "O," page 352, and by Adam Soders and Nancy Soders conveyed to the party of the first part by a deed dated February 1st, 1853, and recorded in Harris County record of deeds book P page 391; Commencing at the S. western corner of said 253¼ acres of land and at a stake in the prairie;

" 'Thence N. 200 vrs. and along with the western league line to a stake in the prairie;

" 'Thence E. 1660½ vrs. to the S. W. corner of 581⅜₁₆ acres of land sold by the party of the second part to the party of the first part;

" 'Thence S. 200 vrs. to a stake in the prairie;

" 'Thence W. 1660½ vrs. to the beginning.
* * *'

" 'Second: 5 acres by deed from Stuer to Harrop dated December 12th, 1860, recorded in Vol. X, page 623, described in said deed as:

" '5 acres of land out of a league of land originally granted to John Reinerman and part of a tract out of said league bought by Mathias Stuer from Adam Sowters & wife;

" 'Beginning at the N. W. corner of said tract; Thence S. 200 vrs.; Thence E. 141⅛ vrs.; Thence N. 200 vrs.; Thence W. 141⅛ vrs. to the beginning. * * *'

"Third: 1⅘ Acres by deed from Stuer to Houston & Texas Central Ry. by deed dated October 31st, 1860, recorded in Vol. X, page 639, described in said deed as:

" 'Beginning on the N. boundary line of 235¼ acres of land in the center of the Houston & Texas Central Railroad;

" 'Thence E. 51¼ vrs. to a stake; Thence S. 49 deg. 30 min. E. 277¹⁄₁₀ vrs. to a stake; Thence W. 51¼ vrs. to a stake; Thence N. 49 deg. 30 min. W. 277¹⁄₁₀ vrs. to the beginning, containing 1⅘ acres. * * *'

"Fourth: 7¹³⁄₁₅ Acres by deed from Stuer to F. A. Rice by deed dated August 25th, 1860, recorded in Vol. X, page 639, described in said deed as:

" 'Beginning in the N. boundary line of the 235½ acres tract 51¼ vrs. E. from the center of said Texas Central Railroad;

" 'Thence S. 49 deg. 30 min. E. 277¹⁄₁₀ vrs. to a stake;

" 'Thence E. 112¼ vrs. to a stake;

" 'Thence N. 196 vrs. to a stake;

" 'Thence W. 341¾ vrs. to the beginning, containing 71⅗₅ acres. * .* *'

"Fifth: '50 Acres this day sold to Samuel Anderson and· wife'. The deed from Stuer to Anderson referred to was dated August 8th, 1890, and filed for record August 11th, 1890, at 12 M., recorded in Vol. 52, p. 6, said fifty acres being described as follows:

" '50 acres of land out of Jno. Reinerman league in Harris County in the State of Texas, and nearer described as follows, to-wit:

" 'Commencing on the E. corner of the 235¼ acre tract purchased by Soders from Mrs. Louisa Betty, etc., see book O, p. 352, of Harris County Record of deeds, where the said tract is crossing or divided by the right-of-way of H. Tex. Central Railroad right-of-way or rather on the S. W. corner of said right-of-way; the metes and bounds of which are given· in the deed of M. Stuce to Houston Texas Central Ry. recorded in Book Vol. X, p. 639, Harris County Record of Deed 1⅘ acres and to which reference is hereby had.

" 'Thence running with the S. line of said right-of-way to the· S. W. line of said 1⅘ acres;

" 'Thence S. to a stake;

" 'Thence E. to the line of 117⅗ acres bought by us from Soder and wife;

" 'Thence N. to place of beginning, containing 50 acres of land including all the improvements thereon erected, built, made, grown, etc.'

"For further description of said tracts previously sold by Stuer as above set forth, reference was made to instruments and records as follows:

" 'For further description of the land herein conveyed reference is hereby made to our deeds and of Harris County Records of Deeds where the above mentioned books and pages refer to and may be seen.'

"I further find that the judgment rendered in this cause in favor of cross-plaintiffs, David Hannah and Chas. C. McRae, does not include any of the land described in the said specific exceptions mentioned in said deed from Stuer to Culmore.

"Ewing Boyd, Judge."

■ After careful consideration of the record, inclusive of the statement of facts, as well as of the arguments presented, this court, under the conclusion that the evidence sustains the fact findings and that the law was properly applied thereto, affirms the judgment so rendered.

A slight but immaterial inadvertence, however, appears in so much of the statement in the third "conclusion of law" as is to the effect that Culmore acquired by the deed referred to all of the land in the "northeast quarter" of the ".Soders tract," save the specific tracts excepted out of it, there being, upon the whole, no issue involved concerning a present claim or title to this "northeast quarter."

Mathias Stuer was conclusively shown to be the common source of title between these litigants to the land thus awarded the appellees, and the trial court's findings are that theirs was the better claim under him; as these in effect determine, what Stuer himself first acquired from Soders and wife was the mathematical west half of the "Soders tract," that appellants' own maps and other evidence conclusively showed ran along a fixed northern line from the Sam Maas 100 acres on the east to·the Reinerman west line on the west, all three of which boundaries were definitely established on the ground; that he then in two different deeds, both of which conveyed only specifically described areas by exact metes and bounds, divested himself of 50 acres out of the northern portion of this western one-half to Samuel Anderson and of 581¾₁₆ acres out of the south portion to Andreas Kroll, the calls likewise expressly tying each tract to the "Soders tract" with its fixed eastern, northern, and western lines, and extending thence the precise distances that inclosed the acreage called for.

From these two deeds out of Stuer the claims herein of appellants emanate, while those of the appellees come from the much later conveyance from him to J. C. B. Culmore (referred to in quoted conclusion· 3), essaying to dispose of what he then had left of the lands here involved.

■ On the same day of this deed to the 581¾₁₆ acres to himself from Stuer, and presumably in advance of it, Andreas Kroll in turn had deeded precisely the same acreage out of the northeastern portion of the "Soders tract" to Stuer, likewise tying it in the description to the same three fixed lines of that tract, thence running around distances in the form of a parallelogram that exactly comprehended that amount of land, only beginning at the Soders northeast corner, instead of its southwest corner, as did the deed from Stuer to him; this deed neither made any reference to the last-mentioned one, nor called for any fixed corners, except the initial one as being coincident with the like corner of the "Soders tract," merely calling for stakes for the other three; it is true that both these 581¾₁₆-acre deeds between Stuer and Kroll—in general introductory descriptive recitations—referred to the tracts about to be conveyed thereby as the "northeastern quarter" and the "southwestern quarter," respectively, of the Soders tract, but so did both alike then descend to such special and detailed descriptions thereof by metes and bounds as to fix their positions at and their extensions from the established locations on the ground of those corners of that tract in such way that they

could not possibly constitute its mathematical northeastern and southwestern quarters; wherefore the trial court was right in holding that these general recitations should be disregarded and the special descriptions be given preference over them. Devlin on Deeds, § 1038, Texas Jurisprudence, vol. 7. p. 126, par. 7.

It is further true that the one of these conveyances running to Kroll also called for its north line to run east from the Reinerman western league line "1660½ varas to the southwest corner" of the 58¹³⁄₁₆-acre tract he had on the same day conveyed to Stuer, but, just as thus designating these tracts as entireties "quarters" of the "Soders tract" had been otherwise—by dominating contextual calls—rendered ineffective, so here too that distance from the undisputedly established location of its starting point could not take this north line to any such corner; therefore it also was smothered by the other determinative calls in the deed. Furthermore, this was not an instance of two deeds mutually calling for an established corner, because, as stated, the other deed made no such call, nor was there any such corner there, the evidence conclusively showing it to have been merely a constructive one.

As concerns the 50 acres Stuer conveyed to Anderson, it is, in effect, mutually conceded here that the trial court properly located it, unless it can be expanded into 59¼ acres by virtue of a release of the vendor's lien therein retained, which Mrs. Stuer executed to Anderson nearly three years later; appellants contend it can and should be, while the appellees urge the contrary.

The solution of the issue, in our opinion, lies in these facts, which conclusively appear in the record: While the respective deeds from Stuer to Culmore for all that then remained of his purchases in the entire "Soders tract" and to Anderson for this particular 50-acre tract therein—just referred to—both bore the same date of August 8, 1890, the one to Culmore was not only filed for record before that to Anderson, but clearly also was, as the trial court held, a conveyance of the land itself; wherefore, since it expressly divested him of all he had left, after excepting what he had sold to different grantees, including the "50 acres this day sold to Samuel Anderson and wife," there remained no title in him to any 9¼ acres that Mrs. Stuer could thereafter have added to the 50 acres by way of the release. Dixon v. Cruse (Tex. Civ. App.) 127 S. W. 591, at page 592.

The several express findings against appellants' limitation pleas are all sufficiently supported, if upon no others, by the consideration that the evidence as a whole fails to show that there was inuring to their benefit any such continuous and exclusive occupancy or possession of any of this land as, in the circumstances otherwise existing, matured a title to it in them under any of the invoked statutes, especially so in view of the trial court's holding, which is here approved, that their deeds did not embrace in their descriptions any part of the land adjudged to the appellees.

Pursuant to these conclusions, the order of affirmance has already. been entered.

Affirmed.

On Motion for Rehearing.

The able and earnest arguments of appellants for a rehearing have resulted in this court's giving the cause extended reconsideration; but, after having done so, it has been impelled to adhere to its original disposition, being still convinced that the determining issues were then correctly decided.

Among their arguments, appellants present with their motion certain maps prepared by themselves for such use on rehearing, but which are wholly dehors the record upon which the appeal has been decided; under well-settled rules, these papers cannot be considered either as evidence, or as having any other place in the actual record before us. Riggle et al. v. Automobile Finance Co. (Tex. Civ. App.) 276 S. W. 439; Queen Insurance Co. v. Galveston, H. & S. A. Ry. Co. et al. (Tex. Civ. App.) 290 S. W. 286, affirmed by the Supreme Court, 296 S. W. 484, on rehearing 3 S. W.(2d) 419; Stephens County v. J. N. McCammon, Inc., by the Supreme Court of Texas, 52 S.W.(2d) 53; Lipscomb v. Leffel & Co. (Tex. Civ. App.) 44 S.W.(2d) 1008; Holland v. Jackson et al. (Tex. Sup.) 37 S.W.(2d) 726.

Neither are such maps good as argument, since they apparently conflict with the findings of the trial court made from maps in evidence during the trial and which are a part of the record on appeal; these record maps, as formerly recited, were those of the appellants themselves.

The extended rearguments of appellants have failed to convince this court that the controlling fact findings below, which were adopted here, did not have sufficient support in the evidence; all these findings are therefore now reiterated, from which it follows that those requested in appellants' motion cannot be made.

Much misunderstanding seems to have attended this court's deduction upon page 12 of its original opinion when it said as to the effect of the trial court's findings: "What Stuer himself first acquired from Soders and wife was the mathematical west half of the 'Soders tract.'" That deduction simply proceeded from the view that the true location of the boundaries of this "Soders tract" was fixed determinably by the calls in the deed from Bethje to Soders, and that, since the first conveyance out of that tract was made

by Soders to Stuer of the "western yet undivided half" of the whole tract that had so gone into Soders before there had been established on the ground any line dividing it into eastern and western portions, Stuer necessarily acquired an exact half of whatever was conveyed from Bethje to Soders, since the latter in turn merely copied the same description by which the whole had come into him.

It by no means follows, however, that the conveyances out of Stuer himself should all be measured by the same yardstick, when the record invariably shows that he thereafter disposed of nothing he had thus acquired, except by specific metes and bounds descriptions of tracts containing precise and limited areas.

In our opinion, the dominating question in the cause is the construction of the Kroll-Stuer two deeds to the $581\frac{3}{16}$ acres each; notwithstanding the renewed insistence that these two instruments merely evidenced a partition of mathematical quarters of the entire Soders tract, this court is constrained to adhere to its former conclusion to the contrary for the simple reason, among many others that might be stated, that, since the several deeds to each of them from Soders definitely located the northern, eastern, and western lines of the whole Soders tract, the makers of these two deeds to portions thereof needed only to describe the respective tracts conveyed by the one to the other out of the same as the northwest quarter and southwest quarter, respectively, of the Soders tract as thus having at least three fixed and certain boundary lines; but, instead of doing so, they—with great precision—figured out the exact distance calls, acreage, and starting points with reference to these three fixed lines of the inclosing tract with what seems to us as the evident intention to exchange only the definite $581\frac{3}{16}$-acre tracts so specifically described by metes and bounds, and in so doing to have used the term "quarter" as a surplusage that may properly be discarded, since, by otherwise describing the tracts as they did, they could not meet; for that reason also, as formerly held, the call for the north line of the lower tract to go to the southwest corner of the one conveyed by Kroll to Stuer could not be held to as controlling, because to do so would require the abandonment of the calls both of distance and the established western line of the Reinermann League as a base.

In this connection appellants criticize the recitation in the original opinion in reference to this southwest corner that "the evidence conclusively showing it to have been merely a constructive one"; perhaps this was an inaccuracy, but, if so, in terms only, and it might have been more appropriate to say that the corner was an estimated or an imaginary one; the "evidence" mentioned was not used as a

statement that there was any definite testimony to that effect, but in the sense that it appeared evident from the record as a whole that those ancient deeds had not been based upon actual surveys, and, that being true, it seemed equally apparent from the texts of the deeds themselves and such surrounding circumstances as were shown that there was at that far distant time no such established corner either contemplated or designated for the southwest corner of the tract so conveyed by Kroll to Stuer; especially so, since there was neither a scintilla of evidence—nor anything to base a presumption to such effect upon—that any stake had either originally been placed, or thereafter located as having been, there; further, neither of the deeds calls for any such established corner.

Upon these considerations, we are clear in the conclusion that the arguments and authorities appellants now present to the effect that, in certain special circumstances, a call for a stake for corner—where surveys were made, and it appeared actually or presumptively that a stake had been put there—may be given the same effect as an artificial object, have no application to the situation here. Of such character is the leading case they cite: Wolf v. Scott (Tex. Civ. App.) 253 S. W. 905, 907.

Further discussion of this voluminous record is not deemed necessary, since the other material conclusions before announced are likewise thought to have been sound; among these is the closing statement of that opinion to the effect that the trial court held appellants' deeds not to have embraced in their descriptions any part of the land adjudged to the appellees; upon re-examination, that is again found to be the rationale of, if not the express statement from, the trial court's findings upon that feature of the cause; this, of course, had no reference to the claim that their deed down under Anderson to the 50-acre tract could be extended by Mrs. Stuer, after the death of her husband, so as to in effect enlarge that tract to $59\frac{1}{4}$ acres; that matter is controlled by the conclusion elsewhere reached that no such extension was permissible.

In final disposition of the question of limitation, it still seems clear that the trial court's finding that there was none is sufficiently supported; appellants' key witness on this question was plainly unable to so connect the various tenancies of the property upon which the continuity of the limitation claim depended as to complete the bar for any of the periods declared upon.

With appreciation to counsel for both sides for the aid given the court both originally and on rehearing, the motion has been overruled.

Overruled.